The order below is hereby signed.

Signed: January 28 2022



Elizabeth L. Gunn
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF COLUMBIA

| In re: | Case No. 21-00062-ELG |
|---|---|
| Johnnie O. Johnson,<br>Debtor. | Chapter 7 |

## MEMORANDUM DECISION AND ORDER SUSTAINING, IN PART, OBJECTION TO EXEMPTION OF REAL PROPERTY

The Court has before it the *Objection to Exemption of Real Property* (ECF No. 40) (the "Objection") filed by creditors Candice M. Williams-Johnson and Gregory L. Johnson (the "Creditors") pursuant to 11 U.S.C. §§ 522(b)(3) and (o). On June 1, 2021, the Debtor filed a *pro se Response to the Objection* (ECF No. 45), and on June 5, 2021 filed a supplement thereto (ECF No. 50) (collectively, the "Response"). The Court held an evidentiary hearing on the Objection and the Response on January 20, 2022 (the "Hearing"), at which the Creditors were represented by counsel and the Debtor appeared *pro se*.[1] At the Hearing, the Court ruled that the Creditors' Objection would be sustained, but took under advisement the total amount of the exemption claimed by the Debtor that would be denied. For the reasons stated at the Hearing, and as more

---

[1] In the intervening time between the filing of the Objection and Response and the Hearing, in August 2021 the Court appointed *pro bono* counsel to assist the Debtor in this contested matter. However, counsel subsequently filed a motion to withdraw as counsel, which was granted in October 2021. The Debtor did not engage replacement counsel and proceeded *pro se* at all times relevant herein.

fully set forth and supplemented by this Memorandum Opinion, the Creditors' Objection to the Debtor's claimed homestead exemption is sustained in part. The Debtor's exemption in her real property is reduced by $77,289.65.

## I. Facts[2]

*i. The Debtor's Bankruptcy Case*

On February 26, 2021 (the "Petition Date"), the Debtor filed a *pro se* petition for relief under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as hereafter amended, the "Bankruptcy Code").[3] The Debtor did not file all of the necessary documents with her petition. However, after a number of deficiency orders from the Court and supplemental pleadings filed by the Debtor, all required statements, lists, schedules, and supporting documents for a chapter 7 case were filed with the Court. The Debtor's Schedule A/B lists real property commonly known as 3918 Southern Avenue SE, Unit A, Washington, DC 20020 (the "Residence") owned by the Debtor with a value of $200,000 and a value of her interest of $145,000.[4] In Schedule D, the Debtor lists a secured claim in the Residence held by SunTrust Bank[5] in the amount of $55,000 (the "Mortgage") (the difference between the Debtor's valuation

---

[2] The Court makes findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, as incorporated into Federal Rule of Bankruptcy Procedure 7052, and under Federal Rule of Bankruptcy Procedure 9014. To the extent that any finding of fact is construed to be a conclusion of law, it is adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is adopted as such. The Court reserves the right to make any additional Findings and Conclusions as may be necessary or as requested by any party.

[3] All section references herein are to the Bankruptcy Code unless specifically stated otherwise.

[4] The entry lists the Debtor as the sole owner of the Residence with a value of $200,000, but then contradictorily states that the Debtor only owns a portion valued at $145,000. The Court infers that the Debtor has inappropriately reduced from the value of the property the approximate balance of her mortgage on the Property and thus adopts the Debtor's $200,000 valuation for purposes of this Memorandum Opinion. There was no other evidence of valuation offered at the Hearing.

[5] The Debtor listed the lien holder as SunTrust Bank, however, on June 17, 2021, Truist Bank filed Proof of Claim 2. BB&T Corporation and SunTrust Banks, Inc. merged effective Dec. 6, 2019 to become Truist Financial Corporation, the entity that operates Truist Bank.

and her claimed amount of interest). In her Schedule C, the Debtor lists an exemption in the Residence of $145,000 (the total "value of her interest" listed in Schedule A/B) based upon "Courts & Jud 15-501(1)(14)." The homestead exemption statute for the District of Columbia provides for an exemption in the aggregate interest real property used as the residence of the debtor above mortgages, deeds of trust, mechanic's liens, or tax liens. D.C. Code § 15-501(1)(14). Therefore, the Court infers from the utilization of the entire value associated with her ownership and reference to "15-501(1)(14)," that the Debtor is claiming an exemption in all the equity in her property above the Mortgage under the District of Columbia's unlimited homestead exemption.[6]

The Debtor's initial chapter 7 § 341 meeting of creditors was scheduled for April 1, 2021, and continued multiple times, with the last continued date on September 30, 2021. On September 18, 2021, the Debtor filed a *Motion to Convert Case to Chapter 13* (ECF No. 76). The Debtor's case was converted to one under chapter 13 on September 30, 2021, thereby canceling the pending chapter 7 § 341 meeting. The case having been converted to one under chapter 13, a new § 341 meeting was scheduled with the chapter 13 trustee to take place on November 15, 2021.

Upon conversion, the Court entered an order setting October 14, 2021 as the deadline for the Debtor to file a chapter 13 plan. Order Converting Case from Chapter 7 to Chapter 13, ECF No. 83. The Debtor did not timely file a chapter 13 plan, and on October 20, 2021 filed a one sentence motion requesting the Court extend the deadline for filing a plan. *See* Pro Se Praecipe to Extend Time Period, ECF No. 91. On October 27, 2021, the Court granted the Debtor an extension through November 8, 2021 to file a chapter 13 plan. ECF No. 94. Once again, the Debtor did not file a chapter 13 plan, and on November 19, 2021, the Court entered its *Order to Show Cause as to Why This Case Should Not be Converted* (ECF No. 101) setting a hearing to consider whether

---

[6] The Debtor also has marked the "100% of fair market, up to the statutory limit," which further supports this conclusion.

the case should be converted back to a case under chapter 7 for cause including unreasonable delay prejudicial to creditors. Notwithstanding the Court's extension of time and the Order to Show Cause, as of the date of the Hearing the Debtor had still failed to file a chapter 13 plan. Due to the Debtor's failure to file a plan and the resulting Order to Show Cause, the chapter 13 § 341 meeting was also continued numerous times, last set for December 13, 2021, and then continued generally. On January 21, 2022, after a hearing on the Order to Show Cause, the Court entered an order re-converting the Debtor's case to chapter 7. ECF No. 122.

*ii. The Objection*

On April 30, 2021, the Creditors timely filed the Objection. The matter was originally set for hearing in August 2021, but a substantive hearing was not held until January 2022 after delays related to discovery and the COVID-19 pandemic. In the interim, on June 1, 2021, the Creditors filed a Complaint to determine the dischargeability of the debts owed to them by the Debtor. Compl., *Williams-Johnson v. Johnson (In re Johnson)*, Case. No. 21-00062-ELG, Adv. Proc. No. 21-10014 (Bankr. D.D.C. June 1, 2021), ECF No. 1.[7] On July 28, 2021, the Creditors filed a *Motion for Summary Judgment as to Count I of the Complaint* (AP ECF No. 9), which the Court granted by a Memorandum Opinion (the "Summary Judgment Opinion") and Order entered on November 23, 2021. AP ECF Nos. 35 and 36. The facts underlying the Complaint and Motion for Summary Judgment are, in part, the same facts relied upon by the Creditors in the Objection – the judgment by the Superior Court for the District of Columbia finding that the Debtor defrauded the Creditors in the sale and retention of all net profits from her former residence located at 2325 Third Street, NE, Washington, DC 20002 (the "Sold Property"). *See* Creditors' Ex. 1 at 23:1–3, ECF No. 115; *see also Williams v. District of Columbia*, 902 A.2d 91, 94 & n.4 (D.C. 2006). Count II of the

---

[7] Hereinafter all filings in *Williams-Johnson v. Johnson* shall be referred to as "AP ECF No."

Complaint – Constructive Trust, remains pending.

After a full trial, the Superior Court of the District of Columbia determined that as of the date of the sale, the Sold Property was owned by the Debtor and the Creditors as tenants in common. Creditors' Ex. 1 at 10-11, ECF No. 115. Specifically, in 1998, Plaintiff Williams-Johnson became a joint tenant owner of the Property with Helen Darden Owens. *Id.* at 9:14–17. In 2000, the Debtor obtained a joint tenant interest in the Property with Ms. Owens and Creditor Candace Williams-Johnson. *Id.* at 9:18–24. Finally, in 2002, the Debtor deeded half of her interest in the Property to Plaintiff Gregory Johnson. *Id.* at 10:11–15. After the 2002 transfer, and until the sale of the Sold Property, Creditor Williams-Johnson owned a one-half interest in the Property, Creditor G. Johnson owned a one-fourth interest in the Property, and the Debtor owned a one-fourth interest in the Property. *Id.* at 10:1–15.

Utilizing a requested figure of $252,000 of net proceeds from the sale of the Sold Property, the Superior Court found that the Debtor was only entitled to one-quarter, or $63,000 of the net proceeds, with the remaining three-quarters ($189,000) being owed to the Creditors.[8] *See id.* at 24:1-4. The Superior Court also awarded the Creditors each $5,000 in punitive damages to be paid from the net proceeds of the sale, reducing the Debtor's allowed portion of net proceeds to $53,000 (21%). *Id.* at 26:3–10. As a result of the award of punitive damages from the net proceeds, the Superior Court's judgment modified the original distribution from the net proceeds of the sale such that Creditor Candace Williams-Johnson was entitled to 52% and Creditor Gregory Johnson was entitled to 27%.[9] Therefore, on February 22, 2021, the Superior Court entered monetary judgment against the Debtor in favor of the Creditors in the amounts of $131,000 and $68,000, plus pre-

---

[8] $131,000 to Creditor Candace Williams-Johnson and $63,000 to Gregory Johnson. Creditors' Ex. 1 at 24:1-4, ECF No. 115.

[9] $131,000/$252,000 = 52%; $68,000/$252,000 = 27%.

imposed judgment interest. Creditors' Ex. 2, ECF No. 115.

### iii. Disposition of the Net Proceeds of the Sale of the Sold Property

On September 14, 2017, the sale of the Sold Property closed, resulting in net proceeds, after payment of all costs of closing and existing liens on the property, of $280,264.21 (the "Net Proceeds"). *See* Creditors' Exs. 3 & 4, ECF No. 115. The Net Proceeds were all deposited into the Debtor's bank account held at PNC Bank (the "PNC Account") on September 15, 2017. Over the next six months, portions of the Net Proceeds were transferred out of the Debtor's PNC Account into various other accounts owned or partially controlled by the Debtor until $97,835.00 was withdrawn on March 9, 2018 (the "Purchase Funds"). Ordinarily, the Court would undertake a detailed tracing analysis of the Net Proceeds to determine what percentage of the Purchase Funds were derived from the Net Proceeds. However, the Debtor's testimony at the Hearing confirmed that the Purchase Funds were comprised solely of a portion of the Net Proceeds.[10]

On March 9, 2018, the Debtor purchased the Residence for a purchase price of $147,500. Creditors' Ex. 17, ECF No. 115. The Debtor paid $97,835 of the purchase price for the Residence with the Purchase Funds and financed the balance with the Mortgage. *See id.*; Proof of Claim No. 2. The Debtor testified that the Purchase Funds "would have to be" all of the Net Proceeds she had left as of the date of purchase of the Residence.[11] In light of the above, as of the purchase date, the

---

[10] The Court notes that even if the Debtor had not affirmed that the Purchase Funds were comprised solely of a portion of the Net Proceeds, the testimony and documents admitted at the Hearing clearly establish, and provide for the direct tracing of no less than $100,000 of the Net Proceeds from the PNC Account to a third-party account, the return of the same to the PNC Account, and then to the Purchase Funds.

[11] Most of the exhibits and additional testimony the Debtor sought to admit at the hearing raised issues with the Debtor's former associate Mahdi Muhammed Shabazz whom she alleged influenced her in the sale of the Sold Property and stole a portion of the Net Proceeds. In light of the Superior Court judgment and this Court's Summary Judgment Opinion, any issues related to the sale were irrelevant to the considerations herein. The Court allowed limited testimony regarding the Debtor's interactions with Mr. Shabazz, but her allegations are also irrelevant given the testimony on the Purchase Funds consisting of a portion of the Net Proceeds. The Court makes no findings or conclusions as to the disposition of the balance of the Net Proceeds or any other claims related to Mr. Shabazz.

Debtor had equity in the Residence of up to $97,835[12] (the "Equity") resulting from the use of the Net Proceeds, in which the Creditors have a claim to 52% and 27%, respectively. Stated otherwise, in light of the Superior Court's judgment, the Equity in the Residence at the time of purchase was, absent any evidence of marshalling or otherwise dividing the Net Proceeds, comprised of $20,545.35 (21% of the Purchase Funds) of the Debtor's funds (the "Debtor's Equity") and $77,289.65 (79% of the Purchase Funds) of funds fraudulently obtained from the Creditors (the "Creditors' Equity"). There is no evidence that the Debtor otherwise used any portion of the Net Proceeds in improving the Residence or otherwise increasing the value thereof after the purchase.

## II. Jurisdiction and Venue

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. §§ 157(b)(2)(A), (B), and (O). This contested matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), and (O). Venue is proper pursuant to 28 U.S.C. §1408(1).

## III. Discussion

*A.    Legal Standard*

The Creditors object to the Debtor's claimed exemption in the equity in the Residence, arguing that all equity is "attributable to" the Net Proceeds and therefore subject to disallowance under § 522(o). Specifically, the Creditors argue that but-for the Debtor's retention of all the Net Proceeds, the Debtor would have been unable to purchase the Residence. The Creditors, as the objecting parties, have the burden of proof by a preponderance of the evidence as to whether the Debtor's claimed exemption should be limited by § 522(o). Bankruptcy Rule 4003(c); *In re Sissom*, 366 B.R. 677, 689 (Bankr. S.D. Tex. 2007) (*citing In re Lacounte*, 342 B.R. 809, 813

---

[12] At closing on the Residence, the Debtor paid the purchase price and additional closing costs totaling $428.45, representing less than half of one percent of the Purchase Funds. There was no evidence introduced as to whether the closing costs were paid from the Debtor's cash payment or the mortgage. Given the *de minimis* amount of the closing costs, the Court will use the full amount of the Purchase Funds as the Equity.

(Bankr. D. Mont. 2005)).

In the District of Columbia, a debtor may elect to use the federal exemptions in § 522 or may elect exemptions available under applicable nonbankruptcy law, including those available under D.C. Code § 15-501. *See In re McDonald*, 279 B.R. 382, 284 (Bankr. D.D.C. 2002). D.C. Code § 15-501(14) allows a debtor to exempt "<u>the debtor's aggregate interest</u> in real property used as a residence or the debtor" above any deed of trust, mortgage, mechanic's lien, or tax lien. D.C. Code § 15-501(14) (emphasis added). Thus, a debtor who elects to use the exemptions from the District of Columbia, absent any other limitation thereon, enjoys an "unlimited" homestead exemption in real property above any secured claims.

However, even if a debtor in bankruptcy elects the District of Columbia exemptions, such exemptions remain subject to the limitations on state exemptions in found in the Bankruptcy Code. One such exemption is Bankruptcy Code § 522(o) which states, in pertinent part, that:

> [T]he value of an interest in—
>
> (1) real or personal property that the debtor or a dependent of the debtor claims as a residence; [or]
> . . .
> (4) real or personal property that the debtor or a dependent of the debtor claims as a homestead
> . . .
> shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (b), if on such date the debtor had held the property so disposed of.

11 U.S.C. § 522(o). The four elements required to establish an objection under § 522(o) are: (1) the debtor disposed of any portion of any property within the 10 years preceding the bankruptcy filing; (2) the debtor could not exempt such property; (3) at least a portion of the proceeds from the sale of the nonexempt property were used to buy, improve, or reduce the debt on a property

the debtor claims exempt as a homestead; and (4) the debtor disposed of the nonexempt property with the intent to hinder, delay or defraud a creditor. *Id.*; *see also In re Presto*, 376 B.R. 564, 658 (Bankr. S.D. Tex. 2007); *In re Sissom*, 366 B.R. at 689. Each of the elements must be met for a debtor's state law homestead exemption to be limited by § 522(o).

B.     *Analysis of Factors*

   *i. The Debtor Disposed of Property within 10 Years of the Petition Date*

The Debtor sold and retained both her 25% interest and the Creditors' 75% interest in the Sold Property in September 2017. This case was filed in February 2021. Thus, the first element of § 522(o) is satisfied.

   *ii. The Debtor Could Not Exempt the Creditors' Portion of the Property*

The District of Columbia homestead exemption is limited to a debtor's aggregate interest in property that the debtor uses as a residence. D.C. Code § 15-501(14). As clearly established by the Superior Court transcript (Exhibit 1), the Debtor was the owner of only a one-quarter interest in the Sold Property. Therefore, as of the date of the sale, the Debtor could not exempt the portion of the Net Proceeds owned by the Creditors. *See* D.C. Code § 15-501(14); *see also Owen v. Owen*, 500 U.S. 305, 308 (1991) (finding that a debtor may only exempt property from property of the estate to the extent that the debtor has an interest in the property). Thus, the second element of § 522(o) is satisfied.

   *iii. The Debtor Utilized Nonexempt Property to Purchase the Residence*

At the Hearing, the Debtor admitted that the Purchase Funds used for a portion of the purchase of the Residence were comprised entirely of the remaining Net Proceeds. However, only $20,545.35 of the Purchase Funds were the Debtor's property, the remaining balance of $77,289.65 were the nonexempt funds of the Creditors. Thus, the third element of § 522(o) is

satisfied.

*iv. The Debtor Disposed of Nonexempt Property with the Intent to Defraud the Creditors*

In most cases, the final element of § 522(o) is the most difficult to prove. *See Holley Performance Prods. v. Coppaken (In re Coppaken)*, 572 B.R. 284, 304 (Bankr. D. Kan. 2017). However, as more fully set forth and established in the Superior Court transcript (Exhibit 1) and this Court's Summary Judgment Opinion, the Debtor defrauded the Creditors when she knowingly caused property owned as tenants in common with the Creditors to be sold and retained the Net Proceeds. Specifically, after a trial on the merits, the Superior Court found that the Debtor "knowingly use[d] a forged power of attorney agreement to affect the sale of property that she was only a one-quarter owner of . . . keep[ing] all the proceeds for herself, [which] satisfies the elements of fraud." *Id.* at 20:1–11. As this Court stated in the Summary Judgment Opinion, "while the exact elements of fraud under District law and actual fraud are not identical, the clear and convincing evidence standard necessary to prove a claim of fraud under District of Columbia law is more stringent than the preponderance of the evidence . . . ." Summ. J. Opinion, AP ECF No. 35. The issue of whether the Debtor's sale of the Sold Property was fraudulent was clearly established in the decision of the Superior Court and this Court's Memorandum Opinion. The Debtor is estopped from arguing otherwise in consideration of the Objection. Thus, the fourth element of § 522(o) is satisfied.

*v. Calculation of the Non-Exempt Portion of the Residence Under § 522(o)*

The Court's consideration of limitation of an exemption under § 522(o) does not end with a finding that all four elements are met. The scope of the limitation is the amount that is "attributable" to the nonexempt property that was fraudulently converted into equity in the Debtor's homestead. *See In re Presto*, 376 B.R. at 572. The Creditors argues that "but-for" the Net

Proceeds, the Debtor would not have been able to purchase the Residence. However, this assertion is contradicted by the fact that the Debtor obtained and utilized a mortgage for almost a third of the purchase price. The Net Proceeds undoubtedly enabled the Debtor to purchase the Residence with only the need for a small mortgage, but nothing in the record suggests, as the Creditors assert, that the Debtor would not have been able to purchase the Residence but-for her retention of the Net Proceeds. Therefore, the Court will limit the denial of the exemption to the amount of funds fraudulently obtained from the Creditors, to the extent the Equity in the Residence still exists. *See In re Smither*, 542 B.R. 39, 50 (Bankr. D. Mass. 2015) (finding that where, as of the filing date, the debtor has no equity in her property and the homestead exemption has no real value, § 522(o) is inapplicable to reduce the claimed homestead).

The Debtor purchased the Residence in 2018 for $147,000 and has scheduled it in this case with a value of $200,000 with a secured lien of approximately $55,000. Thus, based on the record, the Residence retains equity of approximately $145,000, almost double the $77,289.65 of the Creditors' Equity. Therefore, the Court will sustain the Objection under § 522(o) and accordingly will deny the Debtor's exemption in the Residence as to the first $77,289.65 of equity therein, above any qualifying liens.

### III. Conclusion

Therefore, for the foregoing reasons, it is ORDERED that

1. The homestead exemption claimed by the Debtor under D.C. Code § 15-501(1)(14) in the Residence is reduced by $77,289.65.

[Signed and dated above.]

Copy to: Debtor; all counsel of record